1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                  SOUTHERN DISTRICT OF CALIFORNIA

10

11  RUBEN DARIO GARCIA, JR.,        )  Civil No. 10cv01187 AJB(RBB)
                                    )
12              Plaintiff,          )  **REPORT AND RECOMMENDATION**
                                    )  **DENYING REQUEST BY PLAINTIFF**
13                                  )  **TO AMEND CIVIL COMPLAINT [ECF**
    v.                              )  **NO. 59], AND GRANTING IN PART**
14                                  )  **AND DENYING IN PART**
                                    )  **DEFENDANTS' MOTION TO DISMISS**
15  SMITH, STEWART, CHANCE, MOORE,  )  **[ECF NO. 50]**
    CLUCK, VASQUEZ, WALL, BROWN,    )
16  STRICKLAND, ELIAS, SAVALA,      )
    MERCHANT, SUGLICH, CONTRERAS,   )
17  MORRIS, CORTEZ, PEDERSEN,       )
    HIRING AUTHORITY JOHN/JANE      )
18  DOE'S #1 TO 5,                  )
                                    )
19              Defendants.         )
    _____)

20

21       Plaintiff Ruben Dario Garcia, Jr., and his brother, Lenin

22  Garcia, state prisoners proceeding pro se, filed a Complaint on

23  June 1, 2010, pursuant to 42 U.S.C. § 1983 [ECF No. 1].  Plaintiff

24  Ruben Garcia filed a Motion to Proceed In Forma Pauperis that same

25  day [ECF No. 2].  United States District Court Judge Roger T.

26  Benitez issued an Order granting Ruben Garcia's Motion to Proceed

27  In Forma Pauperis, dismissing Lenin Garcia from the lawsuit, and

28  dismissing the entire Complaint for failing to state a claim [ECF

                                   1

No. 5].  Plaintiff Ruben Garcia, Jr., filed a First Amended Complaint on October 5, 2010, which was also dismissed sua sponte for failing to state a claim [ECF Nos. 9, 15].

On December 7, 2010, the Plaintiff filed a Second Amended Complaint against seventeen named prison officials, Defendants Smith, Stewart, Chance, Moore, Cluck, Vasquez, Wall, Brown, Strickland, Elias, Savala, Merchant, Suglich, Contreras, Morris, Cortez, and Pedersen [ECF No. 16].  Garcia alleges that the Defendants retaliated and conspired against him because he exercised his First Amendment right to petition the government through prison grievance procedures.  (See generally Second Am. Compl. 7-20, ECF No. 16.)[1]  Plaintiff argues that Defendants violated his Fourteenth Amendment rights to equal protection and procedural due process, his Eighth Amendment right to be free from cruel and unusual punishment, and his First Amendment right to access the courts.  (See generally id. at 17-21.)

On February 3, 2011, Judge Benitez sua sponte dismissed Garcia's due process, cruel and unusual punishment, and access to courts causes of action for failing to state a claim [ECF No. 17]. He directed service of the Second Amended Complaint on Defendants for Plaintiff's remaining claims of retaliation, conspiracy, and equal protection.  (Order 7-8, Feb. 3, 2011, ECF No. 17.)  Garcia then filed a motion for relief from the Court's Order and a Notice of Appeal to the United States Court of Appeals for the Ninth Circuit, challenging the district court's February 3, 2011 Order

_____

[1]  Because the Second Amended Complaint, Opposition, and Surreply are not consecutively paginated, the Court will cite to them using the page numbers assigned by the electronic case filing system.

10cv01187 AJB(RBB)

[ECF Nos. 18-20, 22].  While the Ninth Circuit appeal was pending, this case was transferred to United States District Court Judge Anthony J. Battaglia [ECF No. 26], and Plaintiff filed another motion contesting the district court's February 3, 2011 Order dismissing certain claims [ECF No. 28].  Judge Battaglia subsequently denied both of Garcia's motions challenging that Order [ECF No. 29].[2]

The Request by Plaintiff to Amend Civil Complaint was filed nunc pro tunc to June 3, 2011 [ECF No. 59].[3]  There, Garcia asks that the Court permit him to amend his Second Amended Complaint to cure the deficiencies identified by the district court in its February 3, 2011 Order.  (Req. Pl. Amend Civil Compl. 2, ECF No. 59.)  To date, the Defendants have not opposed his Motion.

Also before the Court is the Motion to Dismiss filed by Defendants Brown, Chance, Cluck, Contreras, Cortez, Elias, Merchant, Moore, Morris, Pedersen, Savala, Smith, Stewart, Strickland, Suglich, Vasquez, and Wall on April 26, 2011, along with a Memorandum of Points and Authorities [ECF No. 50].  All seventeen named Defendants move to dismiss Garcia's equal protection causes of action for failing to state a claim.  (Mot. Dismiss 1, ECF No. 50; see id. Attach. #1 Mem. P. & A. 5.)  In addition, Defendants Cluck, Elias, Morris, Pedersen, and Strickland

---

[2]   The district court ruled on Garcia's motions because Plaintiff's Ninth Circuit appeal was jurisdictionally defective. (Order Den. Pl.'s Mot. Vacate Order 1, ECF No. 29.)  The Ninth Circuit later dismissed the appeal for lack of jurisdiction [ECF No. 49].

[3]   Although the filings are identical, the Court will treat Garcia's Opposition to Defendants' Motion to Dismiss [ECF No. 58] and his Request to Amend [ECF No. 59] as separate documents [ECF No. 57].

each argue that they should be dismissed from the lawsuit because the allegations set forth against each of them are insufficient to state a claim.  (Mot. Dismiss 1, ECF No. 50; see id. Attach. #1 Mem. P. & A. 2-5.)

Plaintiff's Opposition to Defendants' Motion to Dismiss was filed nunc pro tunc to June 3, 2011 [ECF No. 58].  The Defendants filed a Reply Memorandum of Points and Authorities in Support of Motion to Dismiss on June 21, 2011 [ECF No. 60].  Garcia's Supplemental Motion in Opposition was filed nunc pro tunc to July 6, 2011, which the Court construes as a Surreply [ECF No. 63].

This Court has reviewed the Second Amended Complaint and Garcia's Request to Amend.  The Court has also reviewed Defendants' Motion to Dismiss, Plaintiff's Opposition, Defendants' Reply, and Garcia's Surreply.  For the reasons discussed below, Plaintiff's Request to Amend should be **DENIED**, and Defendants' Motion to Dismiss should be **GRANTED** in part and **DENIED** in part.

## I.  FACTUAL BACKGROUND

The contentions in Garcia's Second Amended Complaint arise from events that occurred while he was incarcerated at Richard J. Donovan Correctional Facility in San Diego, California ("Donovan"). (Second Am. Compl. 1, ECF No. 16.)  The Plaintiff's surviving claims in counts one, two, three, and four allege retaliation, conspiracy, and equal protection causes of action.  (See generally id. 7-20.)

In count one, Garcia complains that on July 25, 2009, he was present when Plaintiff's brother handed Defendant Sergeant Vasquez a grievance challenging the new rule requiring inmates to walk to the "chow hall" in single file and with their shirts tucked in.

4

(See Second Am. Compl. 8, ECF No. 16.) Defendants Vasquez, Steward, and Chance then threatened Garcia that unless he withdrew the grievances he had filed, he would be sent to administrative segregation. (Id. at 8-9.) Plaintiff asserts that soon after, Defendant Chance ordered Garcia to place his hands against the wall and spread his feet. (Id. at 9.) Defendants Vasquez and Chance grabbed Plaintiff by the back of his shirt, screamed at him, and told him that he should withdraw his grievances. (Id.) Garcia contends that Sergeant Vasquez sent Plaintiff to his housing unit and told him that he had one hour to consider whether to retract his appeals. (Id.) Defendant Wall then approached Plaintiff's cell and told Garcia that Lieutenant Elias wanted to know whether he had decided to withdraw the grievances. (Id.) When Garcia responded that he would not retract them, he was purportedly handcuffed and escorted to the "inside of the program office." (Id.)

Plaintiff asserts that while in the office, Defendant Wall grabbed a video camera and began recording an interview of the Plaintiff conducted by Lieutenant Elias, during which Garcia stated that he was being sent to administrative segregation on fabricated charges in retaliation for filing grievances against Defendant Chance and other staff. (Id.) Defendant Elias interrupted Plaintiff to ask him whether he was claiming that staff used excessive force on him, to which Garcia replied that he was not. (Id. at 9-10.) Elias was visibly upset and yelled to Defendant Wall to turn off the video camera, and she terminated the interview. (Id. at 10.)

10cv01187 AJB(RBB)

Defendant Elias filed a segregation order that same day, which was also signed by Defendant Moore, instructing that Plaintiff be retained in administrative segregation. (Id. (citing id. Attach. #3 Ex. 10, at 2).) Garcia maintains that the order was issued without justification and under the pretext that Garcia had alleged an excessive use of force. (See id. at 7-10.) By signing a segregation order based on fabricated events, Defendants Elias and Moore conspired to retaliate against Plaintiff. (See id. at 10.)

The Plaintiff argues that two days later, he submitted an inmate appeal challenging his improper segregation, and hearings were conducted in response. (Id.) Garcia maintains that Defendants Cortez, Suglich, and Contreras subsequently conceded that there was no evidence to support Defendant Elias's decision to segregate Garcia. (Id. at 11.) Plaintiff was nonetheless held in administrative segregation, in part, pending completion of an investigation into his unrelated complaint of excessive force, submitted over a year earlier, on April 20, 2008. (Id. at 11-12; see id. Attach. #3 Ex. 13, at 21, Ex. 14, at 23.) The Defendants fabricated this investigation merely to retain Plaintiff in segregation. (Second Am. Compl. 11-12, ECF No. 16.) Garcia contends that Defendants Cortez, Suglich, and Contreras conspired with Defendants Elias and Moore to retaliate against Plaintiff by keeping him in segregation. (Id. at 12; see id. at 10.) According to Plaintiff, neither the July 25, 2009 segregation order nor the subsequent investigation was supported by any evidence. (Id. at 12.)

Donovan's Institution Classification Committee ultimately released Plaintiff from administrative segregation on September 3,

2009.  (<u>Id.</u>; <u>see</u> <u>id.</u> Attach. #3 Ex. 14, at 23.)  The committee
noted that Garcia was partially restricted from being housed with
"black, mexican, and white" inmates due to past altercations.
(<u>Id.</u>)  When Plaintiff was released from administrative segregation,
Defendants Savala and Wall assigned Garcia to a cell with a Mexican
inmate, and Plaintiff refused the housing assignment.  (<u>See</u> Second
Am. Compl. 12-13, ECF No. 16.)  Without reviewing Garcia's central
file to determine his housing restrictions, Defendant Savala issued
a segregation order for Garcia's refusal to accept assigned
housing.  (<u>Id.</u> at 13; <u>see</u> <u>id.</u> Attach. #3 Ex. 17, at 36.)  The
Plaintiff alleges that he was once again placed in administrative
segregation in retaliation for filing grievances.  (Second Am.
Compl. 14-15, ECF No. 16.)  Defendants Wall, Savala, Suglich, and
Contreras then issued a rules violation report that was also
supported by fabricated charges in retaliation and in furtherance
of their conspiracy to punish Plaintiff.  (<u>Id.</u> at 15.)

    In count two, Garcia argues that he was released from
administrative segregation again on October 9, 2009.  (<u>Id.</u> at 17.)
That same day, Plaintiff signed a cell move request that he gave to
his brother and former plaintiff, Lenin Garcia, who then signed it
and submitted it to prison officials.  (<u>Id.</u>)  Plaintiff and his
brother requested to be housed in the same cell together, pursuant
to Donovan's "convenient cell move program," a program that allows
inmates who are similarly situated to ask to be celled together
(<u>Id.</u>)  The brothers had been cellmates for five and one-half years
before Garcia was sent to administrative segregation, and at the
time the form was submitted, Plaintiff's brother did not have any
cellmate.  (<u>Id.</u>)  The Defendants denied the cell move request;

Plaintiff and his brother subsequently submitted several additional applications that were also denied. (<u>Id.</u>)  Yet, Defendants permitted four other sets of brothers housed in facility three to be celled together through this program. (<u>Id.</u> at 18.)  Plaintiff urges that the denials were part of Defendants' conspiracy to retaliate against him. (<u>Id.</u> at 17.)  As a result, Garcia contends that he was denied the equal opportunity to participate in the institutional program and be treated the same as similarly situated inmates. (<u>Id.</u> at 18.)

In count three, the Plaintiff maintains that he had been assigned a job at the laundry division of the Prison Industry Authority (PIA) since February 14, 2008. (<u>Id.</u> at 19.)  When he was released from administrative segregation on October 9, 2009, Defendants Suglich, Cortez, and Contreras refused to reinstate Plaintiff to his job, despite his prior satisfactory job performance. (<u>Id.</u>)  Since his release from administrative segregation, Garcia maintains, there were at least thirty job openings at PIA laundry, yet the Defendants conspired to deny him reinstatement without cause. (<u>Id.</u>)  Other inmates were transferred to administrative segregation for several months, terminated from their jobs at PIA laundry, and were subsequently reinstated to their positions when they were released from segregation. (<u>Id.</u>)  The Plaintiff contends that Defendants' conduct therefore violates his right to equal protection, in violation of the Fourteenth Amendment. (<u>Id.</u>)

In count four, Garcia makes generalized allegations of a conspiracy to violate his civil rights, reiterating the

10cv01187 AJB(RBB)

constitutional violations he has specified in counts one, two, and three.  (Id. at 20.)

## II.  PLAINTIFF'S MOTION TO AMEND SECOND AMENDED COMPLAINT

Garcia seeks leave to amend his allegations to cure the defects identified by the district court in its February 3, 2011 Order.  (Req. Pl. Am. Civil Compl. 2, ECF No. 59.)  The Plaintiff does not provide any additional basis for his request.

On February 3, 2011, the district court judge previously assigned to this case dismissed Plaintiff's due process, cruel and unusual punishment, and access to courts causes of action without prejudice and without leave to amend, pursuant to 28 U.S.C. §§ 1915(e)(2)(b)(ii) and 1915A(b)(1).  (Order 2, 7, Feb. 3, 2011, ECF No. 17.)  The current district court judge, Judge Battaglia, found that Garcia's subsequent challenges of Judge Benitez's ruling were without merit.  (Order Den. Pl.'s Mot. Vacate Order 2-3, ECF No. 29.)  Because Plaintiff's due process, cruel and unusual punishment, and access to courts causes of action were dismissed without leave to amend, the district court should **DENY** Garcia's request to amend them.

### III.  APPLICABLE LEGAL STANDARDS

### A.  Motions to Dismiss for Failure to State a Claim

A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims in the complaint.  See Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 633 (1999).  "The old formula -- that the complaint must not be dismissed unless it is beyond doubt without merit -- was discarded by the Bell Atlantic decision [Bell

10cv01187 AJB(RBB)

1  Atl. Corp. v. Twombly, 550 U.S. 544, 563 n.8 (2007)]." Limestone

2  Dev. Corp. v. Vill. of Lemont, 520 F.3d 797, 803 (7th Cir. 2008).

3      A complaint must be dismissed if it does not contain "enough

4  facts to state a claim to relief that is plausible on its face."

5  Bell Atl. Corp., 550 U.S. at 570.  "A claim has facial plausibility

6  when the plaintiff pleads factual content that allows the court to

7  draw the reasonable inference that the defendant is liable for the

8  misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 874 (2009).

9  The court must accept as true all material allegations in the

10 complaint, as well as reasonable inferences to be drawn from them,

11 and must construe the complaint in the light most favorable to the

12 plaintiff.  Cholla Ready Mix, Inc. v. Civish, 382 F.3d 969, 973

13 (9th Cir. 2004) (citing Karam v. City of Burbank, 352 F.3d 1188,

14 1192 (9th Cir. 2003)); Parks Sch. of Bus., Inc. v. Symington, 51

15 F.3d 1480, 1484 (9th Cir. 1995); N.L. Indus., Inc. v. Kaplan, 792

16 F.2d 896, 898 (9th Cir. 1986).

17     The court does not look at whether the plaintiff will

18 ultimately prevail, but whether the plaintiff is entitled to

19 present evidence to support the asserted claims.  Jackson v.

20 Birmingham Bd. of Educ., 544 U.S. 167, 184 (2005) (quotation

21 omitted); see Bell Atl. Corp., 550 U.S. at 563 n.8.  A dismissal

22 under Federal Rule of Civil Procedure 12(b)(6) is generally proper

23 only where there "is no cognizable legal theory or an absence of

24 sufficient facts alleged to support a cognizable legal theory."

25 Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001) (citing

26 Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

27 1988)).

28

10cv01187 AJB(RBB)

The court need not accept conclusory allegations in the complaint as true; rather, it must "examine whether [they] follow from the description of facts as alleged by the plaintiff." Holden v. Hagopian, 978 F.2d 1115, 1121 (9th Cir. 1992) (citation omitted); see Halkin v. VeriFone, Inc., 11 F.3d 865, 868 (9th Cir. 1993); see also Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994) ("[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged.") "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

In addition, when resolving a motion to dismiss for failure to state a claim, the court may not generally consider materials outside of the pleadings. Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); Jacobellis v. State Farm Fire & Cas. Co., 120 F.3d 171, 172 (9th Cir. 1997); Allarcom Pay Television Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). "The focus of any Rule 12(b)(6) dismissal . . . is the complaint." Schneider, 151 F.3d at 1197 n.1. This precludes consideration of "new" allegations that may be raised in a plaintiff's opposition to a motion to dismiss brought pursuant to Rule 12(b)(6). Id. (citations omitted).

"When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal [i]s proper . . . ." Parks Sch. of Bus., Inc, 51 F.3d at 1484 (citing Cooper v. Bell, 628 F.2d 1208, 1210 n.2 (9th Cir.

1  1980)).  The court may also consider documents "'whose contents are

2  alleged in a complaint and whose authenticity no party questions,

3  but which are not physically attached to the [plaintiff's]

4  pleading.'"  Sunrize Staging, Inc. v. Ovation Dev. Corp., 241 F.

5  App'x 363, 365 (9th Cir. 2007) (quoting Janas v. McCracken (In re

6  Silicon Graphics Inc. Sec. Litig.), 183 F.3d 970, 986 (9th Cir.

7  1999)) (alteration in original); see Stone v. Writer's Guild of Am.

8  W., Inc., 101 F.3d 1312, 1313-14 (9th Cir. 1996).

9  **B.  Standards Applicable to Pro Se Litigants**

10        Where a plaintiff appears in propria persona in a civil rights

11  case, the court must construe the pleadings liberally and afford

12  the plaintiff any benefit of the doubt.  Karim-Panahi v. Los

13  Angeles Police Dep't, 839 F.2d 621, 623 (9th Cir. 1988).  The rule

14  of liberal construction is "particularly important in civil rights

15  cases."  Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992).

16  In giving liberal interpretation to a pro se civil rights

17  complaint, courts may not "supply essential elements of claims that

18  were not initially pled."  Ivey v. Bd. of Regents of the Univ. of

19  Alaska, 673 F.2d 266, 268 (9th Cir. 1982).  "Vague and conclusory

20  allegations of official participation in civil rights violations

21  are not sufficient to withstand a motion to dismiss."  Id.; see

22  also Jones v. Cmty. Redev. Agency, 733 F.2d 646, 649 (9th Cir.

23  1984) (finding conclusory allegations unsupported by facts

24  insufficient to state a claim under § 1983).  "The plaintiff must

25  allege with at least some degree of particularity overt acts which

26  defendants engaged in that support the plaintiff's claim."  Jones,

27  733 F.2d at 649 (internal quotation omitted).

28

Nevertheless, the court must give a pro se litigant leave to amend his complaint "unless it determines that the pleading could not possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995)).  Thus, before a pro se civil rights complaint may be dismissed, the court must provide the plaintiff with a statement of the complaint's deficiencies.  Karim-Panahi, 839 F.2d at 623-24.  But where amendment of a pro se litigant's complaint would be futile, denial of leave to amend is appropriate.  See James v. Giles, 221 F.3d 1074, 1077 (9th Cir. 2000).

**C.   Stating a Claim Under 42 U.S.C. § 1983**

To state a claim under § 1983, the plaintiff must allege facts sufficient to show (1) a person acting "under color of state law" committed the conduct at issue, and (2) the conduct deprived the plaintiff of some right, privilege, or immunity protected by the Constitution or laws of the United States.  42 U.S.C.A. § 1983 (West 2003); Shah v. County of Los Angeles, 797 F.2d 743, 746 (9th Cir. 1986).

These guidelines apply to the Defendants' Motion to Dismiss.

### IV.   DEFENDANTS' MOTION TO DISMISS

All of the Defendants maintain that Plaintiff's equal protection claims should be dismissed because Garcia failed to allege that he is a member of a protected class and that defendants acted with the intent to discriminate.  (Mot. Dismiss Attach. #1 Mem. P. & A. 5, ECF No. 50.)  Additionally, Defendants Cluck, Elias, Morris, Pedersen, and Strickland each argue they should be dismissed.  (Id. at 2-5.)

13

**A.   Failure to State an Equal Protection Claim**

The Equal Protection Clause of the Fourteenth Amendment ensures that similarly situated persons are treated alike.  <u>City of Cleburne v. Cleburne Living Ctr., Inc.</u>, 473 U.S. 432, 439 (1985). This right extends to prisoners.  <u>Wolf v. McDonnell</u>, 418 U.S. 539, 556 (1974).  The equal protection guarantee safeguards not only groups of people, but also individuals who would constitute a "class of one." <u>Vill. of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000).

A plaintiff can establish an equal protection cause of action by demonstrating that the defendant intentionally discriminated on the basis of plaintiff's membership in a protected class, such as race, religion, national origin, and poverty.  <u>Barren v. Harrington</u>, 152 F.3d 1193, 1194-95 (9th Cir. 1998); <u>Damiano v. Fla. Parole & Prob. Comm'n</u>, 785 F.2d 929, 932-33 (11th Cir. 1986); <u>see United States v. Whitlock</u>, 639 F.3d 935, 941 (9th Cir. 2011) (stating that prisoners do not constitute a suspect class for equal protection purposes).  Alternatively, if the state action does not implicate a fundamental right or a suspect classification, a plaintiff can make an equal protection claim by establishing that the defendant intentionally treated plaintiff differently from other similarly situated individuals without a rational basis for the difference in treatment.  <u>Engquist v. Or. Dep't of Agric.</u>, 553 U.S. 591, 601 (2008); <u>Olech</u>, 528 U.S. at 564.

**1.   Defendants' argument**

The Defendants assert that Plaintiff's claim is that after he was released from administrative segregation, his requests to be housed with his brother were denied, and he was not reinstated to

14

his prison job at PIA laundry. (Mot. Dismiss Attach. #1 Mem. P. & A. 5, ECF No. 50.) "These allegations, while admittedly sufficient to plead a case for retaliation, do not plead a case for a violation of the equal protection clause." (Id.) Merely being an inmate, Defendants contend, does not make Plaintiff part of a suspect class. (Reply Mem. P. & A. 4, ECF No. 60.) Because Garcia has not argued that he is a member of a protected class and that Defendants intended to discriminate against him because of his membership in that class, Defendants insist that Plaintiff has failed to state an equal protection claim. (Mot. Dismiss Attach. #1 Mem. P. & A. 5, ECF No. 50.)

### 2. Plaintiff's argument

Garcia maintains that he has adequately alleged a Fourteenth Amendment claim. (See Opp'n 4-6, ECF No. 58.)[4] Plaintiff argues that Defendants did not allow him to participate in the convenient cell move program. (See Opp'n 6, ECF No. 58.) Specifically, Defendants granted other similarly situated inmates' cell move requests but denied Plaintiff's requests to retaliate against him. (Id.) With regard to the job reinstatement, Garcia has alleged that two other prisoners lost their jobs at the laundry department when they were placed in segregation for several months, yet both inmates were subsequently reinstated. (Id. at 5.) Plaintiff, in

---

[4] The basis for Plaintiff's equal protection allegations is that he was not permitted to live with his brother and was not reinstated to his job at PIA laundry. (See Second Am. Compl. 17-19, ECF No. 16.) Yet, in his Opposition, Garcia attempts to expand the scope of his equal protection claim to include his placement in administrative segregation. (Opp'n 5, ECF No. 58.) Because this is an argument raised for the first time in the Opposition, the Court will only consider Garcia's Fourteenth Amendment claim as pleaded in the Second Amended Complaint. Schneider, 151 F.3d at 1197 n.1; see Harrell, 13 F.3d at 236.

1   contrast, was not reinstated to his job.  (Id. at 5-6.)  Garcia

2   insists that Defendants' disparate treatment was in retaliation for

3   his refusal to retract his grievances.  (See id. at 6.)

4        Finally, Plaintiff submits that it is disingenuous for

5   Defendants to concede that he has stated a retaliation claim but

6   deny that he has stated an equal protection claim.  (Surreply 6,

7   ECF No. 63; see Opp'n 6, ECF No. 58.)  Garcia asserts that by their

8   concession, Defendants have actually accepted responsibility for

9   violating Garcia's right to equal protection through their

10  retaliatory and conspiratorial acts.  (Opp'n 6, ECF No. 58;

11  Surreply 7, ECF No. 63.)  Although Plaintiff does not have a

12  constitutional right to have a prison job or to be housed with a

13  particular inmate, Garcia contends that he has a right to be

14  treated the same as other inmates.  (See Opp'n 6, ECF No. 58;

15  Surreply 6-7, ECF No. 63.)

16       **3.   The Second Amended Complaint**

17       Defendants argue that Plaintiff's equal protection claim fails

18  simply because he has not asserted discrimination based on his

19  membership in a protected class.  (Mot. Dismiss Attach. #1 Mem. P.

20  & A. 5, ECF No. 50.)  They represent that Garcia's theory of

21  liability represents a "fundamental misunderstanding of the equal

22  protection clause."  (Reply Mem. P. & A. 4, ECF No. 60.)

23       On the contrary, the Defendants' theory ignores Supreme Court

24  precedent and reads the Equal Protection Clause too narrowly.  In

25  Vill. of Willowbrook v. Olech, 528 U.S. at 564, the Court

26  determined "whether the Equal Protection Clause gives rise to a

27  'class of one' where the plaintiff did not allege membership in a

28  class or group."  The answer was yes.  Id.  "Our cases have

16

recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." Id.

Although Garcia's assertions do not involve a fundamental right or a suspect classification, he can establish a "class of one" equal protection claim by showing that Defendants treated him differently without any rational basis for the mistreatment. Engquist, 553 U.S. at 603; Olech, 528 U.S. at 564; Reece v. Sisto, No. CIV S-10-0203 JAM EFB P, 2011 U.S. Dist. LEXIS 87931, at *7-8 (E.D. Cal. Aug. 9, 2011) (finding that plaintiff had stated an equal protection claim under an Olech-type analysis, despite defendants' contention that plaintiff failed to allege he was a member of a protected class).

Here, Garcia has alleged that, unlike the other inmates in facility three, Defendants intentionally prevented him from participating in the institutional cell move program merely because he filed too many grievances. (See Second Am. Compl. 17-18, ECF No. 16.) The Plaintiff and his brother are both Peurto Rican, and at the time the initial cell move request was submitted, Plaintiff was restricted from being housed with "black, mexican, and white" inmates, and his brother was housed in a cell by himself. (Id. at 17; see id. Attach. #3 Ex. 14, at 23.) The brothers were compatible cellmates because they had lived in the same cell for five and one-half years prior to Garcia's segregation. (Second Am. Compl. 17, ECF No. 16.) Plaintiff argues that Defendants Merchant and Suglich admitted their retaliatory motive to Plaintiff during a

17

1  verbal altercation with him.  (Id.)  The Defendants granted cell

2  move requests submitted by four other sets of inmate brothers also

3  housed in facility three.  (Id. at 18.)

4      Similarly, Garcia has asserted that, unlike the other inmates

5  in facility three, Defendants intentionally denied him

6  reinstatement to his prison job at PIA laundry when he was released

7  from administrative segregation.  (Id. at 19.)  The Defendants

8  reinstated several other facility three inmates to their jobs at

9  PIA laundry, even though those prisoners had arrived at the

10 facility after Garcia.  (Id.)  Two of those prisoners, inmates

11 Vargas and Isbirr-Rogers Wright, were similarly placed in

12 administrative segregation for departmental investigations on two

13 different occasions.  (Id.)  Both prisoners were terminated from

14 their jobs at PIA laundry, and they spent several months in

15 segregation.  (Id.)  On each occasion, Defendants reinstated the

16 two inmates at PIA laundry after they were released back to general

17 population.  (Id.)  Plaintiff argues that he was likewise sent to

18 administrative segregation for a departmental investigation and

19 terminated from his job at PIA laundry, yet the Defendants refused

20 to reinstate him even though there were more than thirty job

21 vacancies in the department.  (Id.)  The Plaintiff insists that

22 Defendants treated him differently merely to punish him for filing

23 so many grievances.  (Id.)

24     Garcia has adequately identified, beyond a speculative level,

25 other individuals with whom he can be compared for equal protection

26 purposes.  See Hamer v. El Dorado County, No. CIV S-08-2269 KJM EFB

27 PS, 2011 U.S. Dist. LEXIS 20436, at *38-39 (E.D. Cal. Mar. 1,

28 2011).  Plaintiff has sufficiently pleaded a "class of one" equal

protection claim by asserting that Defendants intentionally treated him differently from other similarly situated inmates without any rational basis.  See Engquist, 553 U.S. at 603; Olech, 528 U.S. at 564.   The Defendants have not provided a rational basis for the alleged differential treatment.  See Reece, 2011 U.S. Dist. LEXIS 87931, at *7-8 (denying defendants' motion to dismiss because it was uncertain whether the justification for their conduct would provide a rational basis for treating plaintiff differently from other inmates).  Defendants' Motion to Dismiss the equal protection claims on the basis that Garcia has not alleged that he is a member of a protected class and that Defendants intended to discriminate against him because of that status should be **DENIED**.

**B.    Failure to State a Claim Against Defendants Cluck, Elias, Morris, Pedersen, and Strickland**

In addition, these five Defendants each argue that they should be dismissed from the lawsuit because Garcia has not stated a claim against any of them.  (Mot. Dismiss Attach. #1 Mem. P. & A. 1, ECF No. 50.)

**1.    Correctional Officer Cluck**

Defendant Cluck initially argues that to the extent Plaintiff's brother submitted the cell move request, Plaintiff lacks standing to make allegations against Cluck on behalf of Plaintiff's brother.  (Id. at 2; Reply Mem. P. & A. 1, ECF No. 60.) Further, Garcia has alleged that Defendant Savala directed that Plaintiff's cell move request be denied.  (Mot. Dismiss Attach. #1 Mem. P. & A. 2, ECF No. 50 (citing Second Am. Compl. 17, ECF No. 16).)  Plaintiff has not asserted that a correctional officer, such

1   as Cluck, had any authority to grant the cell move request or

2   overrule a lieutenant's direct orders. (Id.)

3       In his Opposition, Plaintiff insists that he has standing to

4   challenge the denial of the cell move request submitted by his

5   brother. (Opp'n 7, ECF No. 58.) Prison regulations provide that

6   any two prisoners seeking to be housed together pursuant to

7   Donovan's cell move program must submit one form that is signed by

8   all applicable individuals. (Id. (citing Second Am. Compl. Attach.

9   #4 Ex. 21, at 27, ECF No. 16).) Plaintiff argues that he was

10  merely adhering to departmental guidelines by filling out and

11  signing the cell move request form so that his brother could sign

12  in agreement and submit it to Defendants. (Id. at 7-8.) Garcia

13  additionally maintains that officer Cluck was the housing unit

14  officer who had a duty to process the cellmate request by

15  submitting it to his immediate supervisor. (Id. at 8.)

16      The Defendant replies by arguing that there is nothing to

17  suggest that Cluck failed to process the cell move request himself

18  or present it to a supervisor for processing. (Reply Mem. P. & A.

19  2, ECF No. 60.) Plaintiff also has not pointed to any allegation

20  demonstrating that following a supervisor's instructions

21  constitutes conspiratorial conduct. (Id.)

22          **a.  Standing**

23      Defendant Cluck's argument that Plaintiff lacks standing to

24  challenge the denial of the cellmate request submitted by his

25  brother is unavailing. It is well established that a plaintiff may

26  not assert the legal rights of third parties. Powers v. Ohio, 499

27  U.S. 400, 410 (1991); Warth v. Seldin, 422 U.S. 490, 501 (1975).

28  Yet, Garcia's alleged harm is the denial of a request for a cell

move that he completed and that was signed by both Plaintiff and his brother, Lenin Garcia.  It is inconsequential that his brother ultimately submitted the joint request because Plaintiff had a sufficient interest in whether the request was granted or denied, as he asserts it led to the deprivation of a constitutional right. (See Second Am. Compl. 17-18, ECF No. 16 (alleging retaliation, conspiracy, and equal protection claims arising from the denial of the cellmate application request); Warth, 422 U.S. at 501 (stating that a plaintiff must allege a "distinct and palpable injury to himself," even if it is an injury shared by other nonparty individuals).

### b.   Retaliation

"A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system."  Pell v. Procunier, 417 U.S. 817, 822 (1974).  Inmates have a constitutional right to petition for redress of grievances and to file suit without being subjected to retaliation by government officials.  Rhodes v. Robinson, 408 F.3d 559, 567 (9th Cir. 2005); Vignolo v. Miller, 120 F.3d 1075, 1077-78 (9th Cir. 1997); see Bounds v. Smith, 430 U.S. 817, 821 (1977); Silva v. Di Vittorio, No. 08-15620, 2011 U.S. App. LEXIS 19610, at *22 (9th Cir. Sept. 26, 2011).  Because retaliation by prison officials may chill a prisoner's exercise of legitimate constitutional rights, retaliatory conduct is actionable even if it would not otherwise rise to the level of a violation.  Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir. 1989) (citations omitted).

A plaintiff can state a conspiracy to violate civil rights claim under 42 U.S.C. §§ 1983 or 1985. <u>Klingele v. Eikenberry</u>, 849 F.2d 409, 413 (9th Cir. 1988)). To make a claim under § 1985, a plaintiff must set forth "an allegation of racial or class-based discriminatory animus." <u>Id.</u>; <u>see also</u> <u>Sever v. Alaska Pulp Corp.</u>, 978 F.2d 1529, 1536 (9th Cir. 1992). Here, Garcia's Second Amended Complaint does not advance a racial or other discriminatory motive, and Plaintiff has specified that his conspiracy claim is made pursuant to 42 U.S.C. § 1983. (Second Am. Compl. 20, ECF No. 16.) The Court will therefore evaluate Garcia's conspiracy claim under the requirements of § 1983.

"To recover under § 1983 for such retaliation, a plaintiff must prove: (1) he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action by the defendant that would chill a person of ordinary firmness from continuing to engage in the protected activity; and (3) there was a substantial causal relationship between the constitutionally protected activity and the adverse action." <u>Blair v. Bethel School Dist.</u>, 608 F.3d 540, 543 (9th Cir. 2010) (footnote omitted) (citing <u>Pinard v. Clatskanie School Dist. 6J</u>, 467 F.3d 755, 770 (9th Cir. 2006)). "[A] successful retaliation claim requires a finding that 'the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals.'" <u>Pratt v. Rowland</u>, 65 F.3d 802, 806 (9th Cir. 1995) (quoting <u>Rizzo v Dawson</u>, 778 F.2d 527, 532 (9th Cir. 1985)). "The plaintiff bears the burden of pleading and proving the absence of legitimate correctional goals for the conduct he complains of." <u>Id.</u>

In the Second Amended Complaint, Garcia asserts that Defendants Cluck and Brown, as well as a nonparty officer, "notified" Plaintiff's brother that because Plaintiff and his brother had filed grievances and lawsuits against Donovan staff, they would not be allowed to be cellmates anymore. (Second Am. Compl. 17, ECF No. 16.)  Garcia and his brother submitted several other applications to Defendant Cluck, as well as several other Defendants, which were all denied.  (Id.)

First, the Plaintiff has alleged that he was engaged in the constitutionally protected activity of petitioning the government by way of inmate grievances.  Blair, 608 F.3d at 543; see Rhodes, 408 F.3d at 567 (stating that inmates have a First Amendment right to file prison grievances).

Second, Garcia has claimed that he was subject to adverse action that would discourage an ordinary person from further engaging in the protected activity.  See Blair, 608 F.3d at 543. Plaintiff urges that his brother properly submitted the request form to Officer Cluck, the housing unit officer who had a duty to process it by presenting it to his immediate supervisor.  (Opp'n 8, ECF No. 58; see also Second Am. Compl. 17, ECF No. 16.)  Garcia claims Defendant Cluck threatened that "because the Plaintiff and Lenin Garcia had filed grievances and have litigation against [prison staff] that they are not going to allow the Plaintiff and Lenin Garcia to cell-up together anymore . . . ."  (Second Am. Compl. 17, ECF No. 16.)  Plaintiff further maintains that all of the cell requests that he and his brother submitted "had been denied by Defendants."  (Id.)

If true, Cluck's threat could discourage a reasonable person from exercising the right to free speech. Brodheim v. Cry, 584 F.3d 1262, 1270 (9th Cir. 2009) (concluding that the mere threat of harm can be an adverse action regardless of whether it is carried out, even if the threat lacks an "explicit, specific threat of discipline"); see also Suarez Corp. Indus. v. McGraw, 202 F.3d 676, 687 (4th Cir. 2000) (indicating that a threat made in retaliation for the exercise of First Amendment rights is actionable under § 1983); Burgess v. Moore, 39 F.3d 216, 218 (8th Cir. 1994) ("[A] threat of retaliation is sufficient injury if made in retaliation for an inmate's use of prison grievance procedures."); Orr v. Hernandez, No. CV-08-0472-JLQ, 2009 U.S. Dist. LEXIS 68739, at *18 (E.D. Cal. July 20, 2009).

Further, Garcia has asserted that he and his brother submitted a joint grievance for preventing them from being cellmates. (Second Am. Compl. 22, ECF No. 16; see id. Attach. #1 Ex. 1, at 1-15.) The Plaintiff handed the initial appeal to Defendant Cluck on October 14, 2009, yet he never received a response to that appeal or subsequent appeals. (Second Am. Compl. 22, ECF No. 16 (citing id. Attach. #1 Ex. 1, at 1-15).) "The refusal to process [the] appeal . . . was part of the conspiracy over a period of time to frustrate the appeals process and dissuade the Plaintiff from filling [sic] the instant Civil Complaint under the Civil Rights Act 42 U.S.C. § 1983." (Second Am. Compl. 22, ECF No. 16; see Opp'n 8, ECF No. 58 (alleging that Defendant Cluck concealed and refused to properly process the joint appeal challenging the continued denial of cell move requests made by Plaintiff and his brother). Garcia has adequately pleaded adverse action by Officer

Cluck, and there is no indication that Cluck made the threat to advance any legitimate goal.

Defendant's argument that he was directed by Defendant Savala to deny the request is unavailling.  Cluck is alleged to have threatened that Plaintiff's cell move requests would be continually denied.  (Second Am. Compl. 17, ECF No. 16.)  Garcia asserts that Defendants Merchant and Suglich summoned him to the program office and told him that they would ensure he would not cell with his brother again because of his grievances, and Defendant Lieutenant Savala would ensure that all staff members were instructed to do the same.  (Id. Attach. #1 Ex. 1, at 7, 11, 15; Ex. 4, at 26.) These contentions do not preclude Garcia from also stating a retaliation claim against Officer Cluck for similar threats.

Third, Plaintiff has asserted a sufficient connection between his filing of grievances and Cluck's threats that his cellmate applications would continue to be denied.  See Blair, 608 F.3d at 543; (Second Am. Compl. 17, ECF No. 16).  Based on these contentions, Defendant Cluck's Motion to Dismiss the retaliation claim against him should be **DENIED.**

### c.  Conspiracy

To state a conspiracy claim under § 1983, a plaintiff must show (1) an agreement between the defendants to deprive plaintiff of a constitutional right, (2) an overt act in furtherance of the conspiracy, and (3) a constitutional deprivation.  Garcia v. Grimm, No. 06cv225 WQH (PCL), 2011 U.S. Dist. LEXIS 20522, at *24 (S.D. Cal. Mar. 2, 2011); see also Gilbrook v. City of Westminster, 177 F.3d 839, 856-57 (9th Cir. 1999).  "To be liable, each participant in the conspiracy need not know the exact details of the plan, but

each participant must at least share the common objective of the conspiracy." <u>United Steelworkers of Am. v. Phelps Dodge Corp.</u>, 865 F.2d 1539, 1541 (9th Cir. 1989).  Because conspiracies are secret agreements, "[a] defendant's knowledge of and participation in a conspiracy may be inferred from circumstantial evidence and from evidence of the defendant's actions." <u>Gilbrook</u>, 177 F.3d at 856-57.  Conclusory allegations of conspiracy are insufficient to state a claim for relief. <u>Burns v. County of King</u>, 883 F.2d 819, 821 (9th Cir. 1989).

First, Garcia has adequately asserted that there was an agreement between Cluck and the other Defendants to retaliate against Plaintiff for his protected speech activities. <u>See</u> <u>Gilbrook</u>, 177 F.3d at 856.  Defendants Gluck and Brown purportedly made threatening remarks. (Second Am. Compl. 17, ECF No. 16.) Plaintiff has pleaded facts demonstrating that Defendant's actions were "'unlikely to have been undertaken without an agreement.'" <u>See Mendocino Envtl. Ctr. v. Mendocino County</u>, 192 F.3d 1283, 1301 (9th Cir. 1999) (quoting <u>Kunik v. Racine County</u>, 946 F.2d 1574, 1580 (7th Cir. 1991)).

Second, Plaintiff has alleged that Officer Cluck acted in furtherance of an illegal objective. <u>See</u> <u>Gilbrook</u>, 177 F.3d at 856.  The Defendant purportedly threatened that Plaintiff's cell move requests would continually be denied and concealed the inmate grievance that Garcia handed him on October 14, 2009, by refusing to process it. (Second Am. Compl. 17, 22, ECF No. 16; <u>see</u> Opp'n 8-9, ECF No. 58 (arguing that Defendant's statement is circumstantial evidence that Defendant was part of the conspiracy to retaliate against him because Cluck knew the "exact details of the plan" and

shared the common objective of the conspiracy to retaliate against Plaintiff).)  Officer Cluck's knowledge of the conspiracy can reasonably be inferred from these actions.  See Gilbrook, 177 F.3d at 857 (finding that defendants' participation in the retaliatory conspiracy could be inferred from their hostile statements and threats).  Plaintiff has pleaded facts sufficient to infer that Defendant's actions were the result of an understanding to accomplish the conspiracy's objectives.  See Mendocino Envtl. Ctr. v. Mendocino County, 192 F.3d at 1301.

Third, as discussed, the Plaintiff has alleged that Defendant's conduct resulted in Garcia's constitutional rights being violated.  See Gilbrook, 177 F.3d at 856.  Garcia has asserted that he endured threats and adverse disciplinary responses because he filed grievances.  See Brodheim, 584 F.3d at 1271 ("The power of a threat lies not in any negative actions eventually taken, but in the apprehension it creates in the recipient of the threat.") Consequently, Defendant Cluck's Motion to Dismiss should be **DENIED**.

**2.  Lieutenant Elias**

Defendant Elias moves to dismiss Plaintiff's equal protective claim on the basis that Garcia has not alleged that he is a member of a protected class.  (See Mot. Dismiss Attach. #1 Mem. P. & A. 3-4, ECF No. 50.)  All the Defendants have asserted this argument. (See id. at 5.)  For the reasons outlined above, the argument is incorrect.  See Vill. of Willowbrook, 528 U.S. at 564.  Because the Court has recommended that the argument is not a basis for dismissing Plaintiff's equal protection claims, Elias fares no better.

The Defendant also contends that Plaintiff fails to state a retaliation claim based on Elias's purported termination of the videotaped interview with Garcia and her alleged involvement in the denial of Garcia's cell move request. (_Id._ at 3-4.)  Lieutenant Elias maintains that Plaintiff lacks standing to contest the denial of the cell move application, and there is nothing to suggest that Elias had authority to grant the cell move over Defendant Savala's instructions to deny it.  (_Id._)  Finally, the Defendant argues that Garcia's conspiracy claim against her also fails.  (_See id._ at 3.)

In response, Plaintiff insists that he has sufficiently pleaded that Lieutenant Elias and other Defendants verbally harassed him and explicitly threatened that they would assign him to administrative segregation unless he withdrew his inmate grievances.  (Opp'n 9-10, ECF No. 58.)  Elias then used her authority as a lieutenant to place Plaintiff in administrative segregation.  (_Id._ at 10.)  Further, Garcia has maintained that as program lieutenant, Elias had the authority to grant or deny a prisoner's cell move request.  (_Id._; Surreply 5-6, ECF No. 63.)

In her Reply, Defendant concedes that she authored the order instructing that Garcia be segregated.  (Reply Mem. P. & A. 2-3, ECF No. 60.)  According to Elias, in the Second Amended Complaint, Garcia made excessive force accusations, which justified her order.  (_Id._)  For example, Plaintiff states that he was forced up against the wall, had his shirt grabbed and his pants pulled, and was threatened.  (_Id._ at 2 (citing Second Am. Compl. 9, ECF No. 16).)  "Plaintiff's claim, then, that he was not making excessive force allegations is not credible and on its face, the complaint shows that there was a valid penological purpose in the initial

administrative segregation order - the only order in which Elias
was involved." (Id. at 2-3.)  Garcia also has not argued that the
cell move request was ever submitted to Elias, and merely asserting
that Defendant could have approved the request is insufficient.
(Id. at 3.)

Defendant belatedly contests the adequacy of Plaintiff's
allegations concerning her segregation order.  (Id. at 2-3.)  This
contention was not raised in the Motion to Dismiss. (Compare Mot.
Dismiss Attach. #1 Mem. P. & A. 3-4, ECF No. 50 (arguing that
Garcia's claims that she terminated the videotaped interview,
ordered the camera to be turned off in a menacing manner, and
denied the cell move request are insufficient to withstand a motion
to dismiss), with Reply Mem. P. & A. 2-3, ECF No. 60 (acknowledging
that the Second Amended Complaint also charges Elias with issuing a
segregation order based on fabricated charges, yet insisting that
there was a peneological purpose for placing Garcia in
administrative segregation).)

It is improper for a moving party to introduce different legal
arguments in a reply brief.  United States ex rel. Giles v. Sardie,
191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) (citing Lujan v. Nat'l
Wildlife Fed'n, 497 U.S. 871, 894-95 (1990)); see Zamani v. Carnes,
491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not
consider arguments raised for the first time in a reply brief.");
Dytch v. Yoon, No. C 10-02915 MEJ, 2011 U.S. Dist. LEXIS 22594, at
*9 (N.D. Cal. Mar. 7, 2011); Sogeti USA LLC v. Scariano, 606 F.
Supp. 2d 1080, 1086 (D. Ariz. 2009) ("The Court will not grant a
motion to dismiss on the basis of argument first raised in a

1  reply."). Accordingly, the Court will not consider the Defendant's

2  alleged peneological justification for the segregation order.

3              a.    Retaliation

4       To state a claim for retaliation, a plaintiff must contend

5  that he engaged in a protected activity and was subjected to

6  adverse action by the defendant that would discourage an ordinary

7  person from exercising that right.  See Blair, 608 F.3d at 543.

8  The plaintiff must also allege a sufficient causal connection

9  between the protected activity and the adverse action.   Id.

10      In the Second Amended Complaint, Garcia has alleged that he

11  engaged in the protected activity of petitioning the government

12  through prisoner grievances.  See Blair, 608 F.3d at 543.  As

13  analyzed previously, Defendant's argument that Garcia lacks

14  standing to challenge the denial of his grievances is without

15  merit.

16      Elias is alleged to have sent Defendant Wall to ask whether

17  Plaintiff was going to withdraw his grievances. (Second Am. Compl.

18  9, ECF No. 16.)  Later that day, Elias interviewed Garcia but

19  purportedly terminated the questioning when Garcia denied making

20  excessive force claims.  (Id. at 9-10.)  The lieutenant then issued

21  an order placing Plaintiff in administrative segregation and

22  subsequently denied Garcia's cell move request, even though she had

23  the authority to grant it.  (Id. at 10, 17; Opp'n 10, ECF No. 58.)

24  These allegations are sufficient to constitute the "adverse action"

25  required to state a retaliation claim.  Austin v. Terhune, 367 F.3d

26  1167, 1171 (9th Cir. 2004) (holding that retaliatory placement in

27  administrative segregation for filing grievances constitutes

28  adverse conduct); see Gonzalez v. Doe, No. 07-cv-1962-W(POR), 2010

U.S. Dist. LEXIS 98207, at *22 (S.D. Cal. July 28, 2010)
(explaining that adverse action exists where prisoners suffer
confinement).

Finally, the Plaintiff has stated a sufficient causal
relationship between the protected activity and the adverse action.
See <u>Blair</u>, 608 F.3d at 543.  Although Garcia attributes certain
actions to Defendants Vasquez and Chance, Plaintiff has pleaded
that he never made an excessive force claim, which he reiterated
directly to the lieutenant.  (Second Am. Compl. 9-10, ECF No. 16.)
Nonetheless, Elias is alleged to have fabricated a justification
for the segregation order because Garcia refused to withdraw his
grievances.  For all of these reasons, the Defendant's Motion to
Dismiss Plaintiff's retaliation claim should be **DENIED**.

### b.   Conspiracy

To allege a conspiracy to violate civil rights, a plaintiff
must assert there was an agreement between the defendants to
deprive plaintiff of a constitutional right.  See <u>Gilbrook</u>, 177
F.3d at 856.  The defendant must have committed an overt act in
furtherance of the conspiracy, resulting in a constitutional
deprivation.  <u>Id.</u>

The Plaintiff has asserted that there was an agreement between
Elias and other Defendants to retaliate against Garcia for filing
inmate grievances.  See <u>id.</u>  He has also sufficiently pleaded that
Lieutenant Elias committed an overt act to further the Defendants'
conspiracy to retaliate.  See <u>id.</u>  Defendant purportedly sent an
officer to ask Plaintiff whether he had decided to withdraw his
grievances.  When the Plaintiff denied that he was making an
excessive force claim, the lieutenant terminated the interview and

issued a segregation order.  Garcia also maintains that the
Defendant subsequently denied his cell move application.  Lastly,
the Plaintiff contends that Defendant's actions violated his
constitutional rights because he was held in administrative
segregation as punishment for exercising his First Amendment
rights.  See Gilbrook, 177 F.3d at 856.  In light of the
allegations in the Second Amended Complaint, Defendant's actions do
not advance a legitimate peneological justification.  See Pratt, 65
F.3d at 806.

Accordingly, Lieutenant Elias's Motion to Dismiss Garcia's
conspiracy claim should be **DENIED**.

**3.   Warden Morris and Correctional Counselor II Pedersen**

Defendants Morris and Pedersen maintain that the only
contentions against them in the Second Amended Complaint concern
Plaintiff's access to courts claim in count five, which was
dismissed on March 15, 2011.  (Mot. Dismiss Attach. #1 Mem. P. & A.
4, ECF No. 50.)  Because there are no remaining causes of action
against them, Morris and Pedersen argue that they should be
dismissed entirely.  (Id.)  The Plaintiff argues in opposition that
he should be permitted to amend his Second Amended Complaint before
the Court rules on Defendants Morris and Pedersen's Motion to
Dismiss.  (Opp'n 11, ECF No. 58.)  Morris and Pedersen challenge
Garcia's request to amend because he does not provide any
indication as to what he seeks to allege against either Defendant.
(Reply Mem. P. & A. 3, ECF No. 60.)  Plaintiff initiated this
lawsuit more than one year ago, he has amended his pleading twice,
and he has sued seventeen individuals.  (Id.)  If Garcia had a

claim to make against either of them, Defendants maintain, he should have asserted it already.  (Id.)

The Court has addressed Garcia's attempt to amend claims that Judge Benitez dismissed without leave to amend on February 3, 2011, and Judge Battaglia affirmed on March 21, 2011.  The Court will not entertain Garcia's access to courts claim because it was dismissed without leave to amend.  Because this allegation is the only contention pleaded against Defendants Morris and Pedersen, Garcia's claims against them should be **DISMISSED** without leave to amend.

### 4.   Sergeant Strickland

Defendant Strickland submits that Garcia's only claim against him concerns the denial of Plaintiff's cell move request, which Garcia lacks standing to challenge.  (Mot. Dismiss Attach. #1 Mem. P. & A. 4, ECF No. 50.)  The Defendant further argues that nothing in the record demonstrates he had actual authority to deny the cell move request or overrule the orders of Defendant Lieutenant Savala.  (Id.; Reply Mem. P. & A. 3, ECF No. 60.)  According to Strickland, Garcia's conspiracy claim also fails.  (Mot. Dismiss Attach. #1 Mem. P. & A. 4–5, ECF No. 50.)

Plaintiff reiterates that he does not lack standing to challenge the denial of his cell move request.  (Opp'n 11, ECF No. 58.)  He also contends that Defendant Strickland was "assigned the post of program and yard sergeant," and he had the authority to grant or deny Plaintiff's cell move request.  (Id.)  Sergeant Strickland's failure to grant the request evidences his role in the conspiracy to retaliate against Garcia for submitting grievances. (Id.)

1        **a.   Retaliation**

2      The Plaintiff has asserted that he was engaged in the

3 constitutionally protected activity of petitioning the government

4 through inmate grievances.  See Blair, 608 F.3d at 543.  He has

5 failed to allege, however, that Strickland committed an adverse

6 action that would discourage an ordinary person from exercising his

7 or her rights.  See id.  The action taken by the Defendant —

8 receiving Plaintiff's cell move request that was eventually denied

9 — was not "clearly adverse" to the Plaintiff and does not

10 constitute the type of adverse action required to state a

11 retaliation claim.  See Garland v. Skribner, 2008 U.S. Dist. LEXIS

12 78835, at *11-12 (E.D. Cal. Oct. 2, 2008) (citing examples of

13 action that is clearly adverse to the plaintiff).  Garcia has not

14 provided facts suggesting that Strickland participated in the

15 decision to deny the request, caused the denial, or otherwise acted

16 in furtherance of the purported conspiracy.  See Harris v. City of

17 Roseburg, 664 F.2d 1121, 1125 (9th Cir. 1981) (noting that

18 liability is established by showing that defendants either

19 personally participated in a deprivation of plaintiff's rights, or

20 caused the deprivation to occur).  Defendant's Motion to Dismiss

21 the retaliation claim against him should be **GRANTED**.

22 Courts must give a plaintiff leave to amend an allegation unless he

23 could not possibly cure the claim by asserting other facts.  Lopez,

24 203 F.3d at 1127.  A plaintiff should not be given the opportunity

25 to amend when doing so would be futile.  See James, 221 F.3d at

26 1077.  A court's discretion regarding amendments is "especially"

27 broad if it has already granted the party leave to amend.

28 Sitanggang v. Countrywide Home Loans, Inc., 419 F. App'x 756, 757

1  (9th Cir. 2011) (citing <u>DCD Programs, Ltd. v. Leighton</u>, 833 F.2d

2  183, 186 n.3 (9th Cir. 1987)).

3  The district court dismissed Plaintiff's original Complaint,

4  pursuant to 28 U.S.C. §§ 1915(e)(2)(b), 1915A(b), and granted him

5  leave to amend to correct the deficiencies outlined by the Court

6  [ECF No. 5].   The district court similarly dismissed Garcia's First

7  Amended Complaint, yet gave him leave to amend his pleading to cure

8  the defects identified by the court [ECF No. 15].   Because Garcia

9  has already been given two opportunities to state a retaliation

10 claim against Defendant Strickland, he should not be given further

11 leave to amend.   <u>See</u> <u>Sitanggang</u>, 419 F. App'x at 757.

12            **b.   Conspiracy**

13     Although Plaintiff has alleged in a conclusory manner that

14 there was an agreement between Sergeant Strickland and the other

15 Defendants to retaliate against him for filing grievances, the

16 facts in the Second Amended Complaint are insufficient to support a

17 retaliation claim.   <u>See</u> <u>Gilbrook</u>, 177 F.3d at 856.   Further,

18 Plaintiff has not stated that Defendant Strickland committed an

19 overt act in furtherance of the conspiracy to retaliate.   <u>See</u> <u>id.</u>

20 The allegations are insufficient to tie Strickland to the

21 conspiracy.   <u>Id.</u> at 857.   Merely alleging that Strickland was one

22 of multiple Defendants who received Plaintiff's cell move requests

23 that were ultimately denied is insufficient to constitute an overt

24 act.   Conclusory allegations of conspiracy are insufficient to

25 state a claim, and Defendant Strickland's Motion to Dismiss the

26 conspiracy cause of action should be **GRANTED**.   <u>See</u> <u>Burns</u>, 883 F.2d

27 at 822.   Because Plaintiff has had three opportunities to plead a

28

1   conspiracy claim against Strickland, Garcia should not be given

2   further leave to amend. See Sitangqang, 419 F. App'x at 757.

3                        **VI.   CONCLUSION**

4        For the reasons stated above, the Motion to Dismiss Defendants

5   Cluck and Elias from the lawsuit should be **DENIED.**  The only

6   allegations against Defendants Morris and Pedersen concern

7   Plaintiff's right to access the courts.  Because this claim has

8   been dismissed without leave to amend, Defendants Morris and

9   Pedersen's Motion to Dismiss should be **GRANTED** without leave to

10  amend.  Finally, the Motion to Dismiss Defendant Strickland from

11  the action should be **GRANTED** without leave to amend.  With the

12  exception of Defendants Morris, Pedersen, and Strickland, the

13  Defendants' Motion to Dismiss Plaintiff's equal protection claims

14  on the basis that Garcia has not alleged that he is a member of a

15  protected class and that the defendants acted with an intent to

16  discriminate should be **DENIED.**

17       This Report and Recommendation will be submitted to the United

18  States District Court judge assigned to this case, pursuant to the

19  provisions of 28 U.S.C. § 636(b)(1).  Any party may file written

20  objections with the Court and serve a copy on all parties on or

21  before January 6, 2012.  The document should be captioned

22  "Objections to Report and Recommendation."  Any reply to the

23  objections shall be served and filed on or before January 20, 2012.

24

25

26

27

28

36                                                  10cv01187 AJB(RBB)

1   The parties are advised that failure to file objections within the

2   specified time may waive the right to appeal the district court's

3   order.   _Martinez v. Ylst_, 951 F.2d 1153 (9th Cir. 1991).

4        IT IS SO ORDERED.

5

6   DATE:   December 13, 2011

7                                        Ruben B. Brooks
                                         United States Magistrate Judge

8   cc:  Judge Battaglia
          All Parties of Record

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28